Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| NYDIA TORO MELÉNDEZ; PABELLÓN DE LA VICTORIA MOVIMIENTO IGLESIAS DE FE, INC. Y OTROS<br><br>Apelante<br><br>v.<br><br>HÉCTOR RAFAEL PÉREZ PÉREZ, su esposa EVELYN PÉREZ Y OTROS<br><br>Apelada | TA2025AP00032 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala de MAYAGÜEZ<br><br>Caso Núm.: MZ2025CV00008<br><br>Sobre: Procedimientos Especiales (Injunction Preliminar y Permanente) Daños y Perjuicios |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de agosto de 2025.

El 22 de junio de 2025, la Sra. Nydia Toro Melendez (en adelante, señora Toro), el Pabellón de la Victoria Movimiento Iglesias de Fe Inc. (en adelante, la Corporación), y Otros (en conjunto, los apelantes) presentaron ante nos un recurso de *Apelación*. Allí, nos solicitaron la revocación de la *Sentencia* emitida el 25 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI o foro primario). Por virtud de aludido dictamen, el foro primario declaró Ha Lugar la *Moción de Desestimación* y, en consecuencia, desestimó la *Demanda*.

Examinado el expediente, y conforme al derecho aplicable que más adelante enunciaremos, resolvemos **revocar** la *Sentencia* recurrida.

**-I-**

El 2 de enero de 2025, los apelantes presentaron una *Demanda* en contra del Sr. Héctor Rafael Pérez Pérez (en adelante, señor Pérez o Pastor Fundador), la Sra. Evelyn Pérez (en adelante, señora Pérez) y la Sociedad

Legal de Gananciales compuesta por ambos. También se incluyó al Sr. Carlos Augusto Martínez (en adelante, señor Martínez), la Sra. Marlyn Arroyo (en adelante, señora Arroyo) y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los apelados).

En primer lugar, alegaron que la Corporación era dirigida y representada por una Junta de Gobierno (en adelante, la Junta) presidida por el Pastor Fundador y compuesta por ocho (8) oficiales que ocupaban los puestos de vicepresidente, secretario, tesorero y los vocales. Sostuvieron que, dichos oficiales eran nominados por el Pastor Fundador y aprobados por la asamblea. Así, esbozaron que la señora Toro ejerció como vicepresidenta de la Corporación desde el 10 de enero de 2020, cargo que no había sido revocado.

No obstante, señalaron que el 2 de diciembre de 2024, el señor Pérez presentó ante el Departamento de Estado de Puerto Rico, una *Resolución Corporativa* en la cual nombraba a la señora Pérez y el señor Martínez como vicepresidenta y secretario, respectivamente, de la Corporación. Indicaron que dicho acto contravenía los procedimientos establecidos en el Reglamento General de la Corporación, toda vez que no se informó a la Junta, ni se celebró una asamblea para evaluar y aprobar estos nombramientos. De igual forma, manifestaron que el señor Pérez ha tomado decisiones arbitrarias contrarias a dicho reglamento, la Constitución y el mejor bienestar de la Corporación. Esgrimieron que los apelados han acaparado para sí injerencias sobre los asuntos de la Corporación, reteniendo de manera ilegítima posiciones y el control de cuentas de banco sobre las operaciones de la iglesia. Por lo cual, solicitaron al TPI lo siguiente:

1. que ordenara a los codemandados a entregar a la parte demandante todo registro y todo documento de cualquier naturaleza de las corporaciones que estén bajo su poder o control;

2.  que ordenara a los codemandados cesar y desistir de continuar desempeñando funciones o cargos administrativos y gerenciales de todo tipo en la corporación Pabellón de la Victoria Movimiento Iglesia de Fe y el desalojo de sus oficinas;

3.  que se anulen los nombramientos a la Junta de Gobierno de Héctor Rafael Pérez Pérez como presidente, de Evelyn Pérez como vicepresidenta, y de Carlos Augusto Martínez como secretario por ser contrarios a derecho;

4.  que se reinstalen a los demandantes como la Junta de Gobierno en propiedad;

5.  que se le prohíba a la parte demandada intervenir de manera caprichosa en su contra; y

6.  que se ordenara el pago de costas y gastos a favor de la parte demandante, se le conceda una suma razonable por concepto de honorarios de abogado, así como cualquier otro remedio en ley proceda.

Tras varios incidentes procesales, los apelados presentaron una *Moción de Desestimación conforme a la Regla 10.2(1) y (5) de Procedimiento Civil*. Alegaron que, conforme a nuestro ordenamiento jurídico, los tribunales no podían intervenir en asuntos eclesiásticos de la Corporación ya que violarían derechos constitucionales enmarcados en la constitución de Estados Unidos y Puerto Rico. Así, manifestaron que la señora Toro fue destituida por faltar a los principios dogmáticos de la iglesia, por ende, no tenía legitimación activa ya que no era un miembro con interés. A su vez, sostuvieron que los apelantes incumplieron con los requisitos que establecía el Art. 7.10 de la Ley Núm. 164 del 16 de diciembre de 2009, según enmendada, conocida como la "Ley General de Corporaciones" (Ley Núm. 164-2009) para el *injunction* estatutario y para el *injunction* al amparo de las Reglas de Procedimiento Civil. En cuanto a esto, indicaron que no se demostró la existencia de un daño irreparable o la inexistencia de un remedio inadecuado en ley. De igual forma, señalaron que la solicitud de *injunction* implicaría una intromisión del Estado sobre la administración interna de la iglesia, lo cual rebasaría los límites de la jurisdicción judicial

debido a la naturaleza intrínseca de la controversia. Por lo cual, solicitaron la desestimación del caso de epígrafe.

En desacuerdo, el 22 de abril de 2025, los apelantes presentaron su *Oposición a Solicitud de Desestimación*. En esta, alegaron que la causa de acción giraba sobre un asunto de derecho corporativo y no dogmático, por lo cual no procedía la aplicación de la doctrina de separación de iglesia y Estado bajo la Constitución de Puerto Rico. Luego, manifestaron que la expulsión de la señora Toro se notificó el 16 de marzo de 2025, posterior a la radicación de la demanda, por ende, los apelados pretendían inducir a error al tribunal. Además, indicaron que dicha expulsión incumplió con los procedimientos que disponía el Reglamento de la Corporación. Así pues, tras esbozar el derecho aplicable, sostuvieron que el foro primario poseía jurisdicción y competencia sobre la controversia de epígrafe.

Analizado los planteamientos presentados por las partes, el 25 de abril de 2025, el foro primario emitió una *Sentencia*. En primer lugar, determinó que tenía jurisdicción debido a que la *Demanda* no requería evaluar asuntos eclesiásticos sino corporativos. Acto seguido, expresó que de los autos no surgía alegación o evidencia de reelección o extensión de la vicepresidencia de la señora Toro, cuyo nombramiento tenía una duración de dos años prorrogable a dos años adicionales. Ante este hecho, y debido a que al momento en que se sometió la reclamación el término máximo de cuatro años permitido por el reglamento para el nombramiento había expirado, resolvió que los apelantes carecían de legitimación activa para incoar la causa de acción al amparo del Art. 7.15 de la Ley Núm. 164-2009.

En cuanto a la reclamación bajo el Art. 7.10 de la referida ley, el foro primario determinó que los apelantes incumplieron con el requisito procesal de haber presentado un requerimiento jurado previo a la corporación como condición para solicitar acceso judicial a libros y documentos corporativos. Sostuvo que dicho requisito era mandatorio, por

lo que, procedía la desestimación de la mencionada causa de acción. Por último, respecto a la solicitud de interdicto preliminar y permanente bajo la Regla 57 de Procedimiento Civil, concluyó que la declaración jurada que acompañó la *Demanda* no satisfizo los requisitos de especificidad exigidos por la jurisprudencia para este tipo de recurso. En virtud de todo esto, declaró Ha Lugar la *Moción de Desestimación* y, en consecuencia, desestimó la *Demanda*.

En desacuerdo, el 13 de mayo de 2025, los apelantes presentaron una *Moción de Reconsideración*. En particular, alegaron que, el 11 de enero de 2024, se convocó una reunión extraordinaria en la cual los miembros presentes votaron a favor y se confirmó, la extensión del nombramiento de la Junta de Gobierno saliente hasta que se nombrara una nueva, en conformidad con los procedimientos establecidos en el Reglamento de la Corporación. A tales efectos, plantearon que tenían legitimación activa para instar la reclamación de epígrafe.

Respecto a la solicitud de interdicto preliminar y permanente al amparo de la Regla 57 de Procedimiento Civil, sostuvieron que desestimar la *Demanda* por un alegado incumplimiento era una determinación excesiva, más cuando se trataba de una deficiencia de forma la cual mediante enmienda se podía corregir. Por lo cual, solicitaron que se autorizara la *Demanda Enmendada* y ordenara la continuación de los procedimientos.

El 15 de mayo de 2025, el señor Martínez, la señora Arroyo y la Sociedad Legal de Gananciales compuesta por ambos presentaron una *Moción en Oposición a Moción de Reconsideración*. En esencia, reiteraron que la controversia de epígrafe giraba sobre un asunto eclesiástico, por lo que, no podía ser atendida por el foro primario. Así, manifestaron que los apelantes no tenían legitimación activa ya que fueron desafiliados de la Corporación. A su vez, esgrimieron que los apelantes incumplieron con los

requisitos del Art. 7.10 de la Ley Núm. 164-2009, por ende, no procedía el *injunction* estatutario.

Atendido los escritos, el 23 de mayo de 2025, el TPI emitió una *Orden* en la cual declaró No Ha Lugar la *Moción de Reconsideración*. De esta determinación, los apelantes acudieron ante nos mediante el recurso de epígrafe y señalaron la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA ("TPI") AL CONCLUIR QUE LA PARTE APELANTE CARECÍA DE LEGITIMACIÓN ACTIVA POR: (1) HABER TRANSCURRIDO EL TÉRMINO MÁXIMO DE CUATRO (4) AÑOS, EL 10 DE ENERO DE 2024, COMO OFICIAL DE LA CORPORACIÓN Y HABIÉNDOSE PRESENTADO LA DEMANDA EL 2 DE ENERO DE 2025; (2) NO HABER ACREDITADO LA CONTINUIDAD VÁLIDA DE SU POSICIÓN COMO OFICIAL DE LA CORPORACIÓN AL MOMENTO DE PRESENTAR LA DEMANDA, Y ACUDIR AL FORO JUDICIAL BAJO EL AMPARO DEL ARTÍCULO 7.15 DE LA LEY GENERAL DE CORPORACIONES.
>
> SEGUNDO ERROR: ERRÓ EL TPI AL DETERMINAR QUE LA DECLARACIÓN JURADA DE LA DEMANDA NO SATISFACE LOS REQUISITOS DE ESPECIFICDAD EXIGIDOS POR LA JURISPRUDENCIA PARA LOS RECURSOS DE INTERDICTO PRELIMINAR Y PERMANENTE AL AMPARO DE LA REGLA 57 DE PROCEDIMIENTO CIVIL, ASÍ COMO TAMBIÉN ERRÓ AL DECLARAR NO HA LUGAR LA SOLICITUD DE ENMIENDA A LA DEMANDA.

Atendido el recurso, el 30 de junio de 2025, emitimos una *Resolución* en la que concedimos a los apelados el término dispuesto en el Reglamento de este Tribunal, 4 LPRA Ap. XXII-B para presentar su alegato. No obstante, no comparecieron dentro del término que le concedimos para hacerlo, por lo que damos por sometido el asunto sin el beneficio de sus comparecencias y procedemos a resolver las controversias planteadas por los apelantes.

-II-

*A.*

El principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial. Hernández, Santa v. Srio. de Hacienda, 208 DPR 727, 738 (2022) y casos allí citados. Como elemento necesario para la adjudicación debida de los méritos de una controversia, el principio de justiciabilidad

impone a los tribunales el deber de evaluar la legitimación activa de quienes acuden a su auxilio. *Íd.*, al citar a Hernández Torres v. Gobernador, 129 DPR 824, 835 (1992).

La legitimación activa se define como la capacidad que se requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. Hernández, Santa v. Srio. de Hacienda, *supra*. Al amparo de la doctrina de legitimación activa, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. *Íd.*, y casos allí citados.

*B.*

El injunction es un recurso extraordinario que se define como "un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra".[1] Ello, con el fin primordial de evitar perjuicios inminentes o daños irreparables a personas cuando no existe remedio adecuado en ley. VDE Corporation v. F & R Contractors, 180 DPR 21, 40 (2010). Ahora bien, este recurso se manifiesta en tres modalidades: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. Next Step Medical v. Bromedicon et al., 190 DPR 474, 486 (2014). En lo particular, al momento de evaluar si expedir o no una orden de entredicho provisional o *injunction* preliminar se debe considerar:

> (a) La naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne en

---

[1] Art. 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 3421.

académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. [2]

Dicho esto, la concesión del remedio estará dentro de la sana discreción judicial. Next Step Medical v. Bromedicon et al., *supra*, pág. 487. Además, que se ejercerá "al considerar tanto los intereses como las necesidades de las partes involucradas en el caso". *Íd.*

## C.

En lo pertinente, el Art. 7.15 de la Ley Núm. 164-2009 atiende la impugnación de elecciones de directores y los procedimientos para determinar su validez. A tales efectos, dicho artículo dispone:

> A. A petición de cualquier accionista o director, o de cualquier oficial cuyo cargo esté siendo impugnado o cualquier miembro de una corporación sin acciones de capital, el Tribunal de Primera Instancia (Sala Superior) podrá oír a las partes y determinar la validez de cualquier elección, nombramiento, destitución o renuncia de cualquier director, miembro de un organismo directivo u oficial de cualquier corporación, así como el derecho de cualquier persona a ejercer o continuar ejerciendo tal cargo y, si el cargo fuere reclamado por más de una persona, podrá determinar a cuál de ellas le corresponde el mismo. En cualquiera de estos casos y a esos efectos, el Tribunal de Primera Instancia (Sala Superior) podrá, con plena facultad para obligar a su cumplimiento, ordenar y decretar, según sea justo y razonable, la presentación de cualquier libro, documento o cuenta de la corporación relacionado con el asunto. Si se concluyera que no ha habido elección válida, el Tribunal de Primera Instancia (Sala Superior) podrá ordenar que se efectúe una elección, según lo prescrito en el Artículo 7.01 de esta Ley. Con respecto a cualquier petición a tenor con este Artículo, el emplazamiento al agente residente de la corporación mediante copias de la petición se considerará emplazamiento de la corporación y de la persona impugnada como titular del cargo, así como de la persona, si la hubiere, que reclama el derecho a ejercerlo. El agente residente deberá enviar de inmediato copia de la petición, que de tal modo se le entregue a la corporación y a la persona, cuyo derecho al cargo se impugna, así como a la persona, si la hubiere, que reclama el derecho a tal ejercicio. El envío deberá hacerse por carta sellada, registrada y franqueada, dirigida a tal corporación y a tal persona a sus últimas direcciones postales conocidas por el agente residente o suministrada a éste por el accionista peticionario. El Tribunal de Primera Instancia (Sala Superior) podrá ordenar cualquier otra forma de notificación o notificaciones adicionales de la petición, según estime apropiado de acuerdo a las circunstancias.
>
> B. A petición de cualquier accionista o miembro de una corporación sin acciones, el Tribunal de Primera Instancia (Sala Superior) podrá juzgar y determinar el resultado de cualquier voto de dichos accionistas o miembros, según sea el caso, sobre asuntos que no sean las elecciones de directores, oficiales o miembros del

---

[2] 32 LPRA Ap. V, R. 57.3.

organismo directivo. El emplazamiento del agente residente de la corporación constituirá emplazamiento de la corporación, y ninguna otra parte tendrá que ser incluida para que el Tribunal pueda adjudicar el resultado del voto. El Tribunal podrá ordenar cualquier forma de notificación de la petición, según estime apropiado de acuerdo a las circunstancias.[3]

D.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a una parte que es demandada, mediante la presentación de una moción debidamente fundamentada a esos fines, solicitar la desestimación de la demanda instada en su contra. En particular, la referida regla establece que la parte demandada podrá solicitar la desestimación de la demanda en su contra por alguno de los siguientes fundamentos:

(1) Falta de jurisdicción sobre la materia.
(2) Falta de jurisdicción sobre la persona.
(3) Insuficiencia del emplazamiento.
(4) Insuficiencia del diligenciamiento del emplazamiento.
(5) Dejar de exponer una reclamación que justifique la concesión de un remedio.
(6) Dejar de acumular una parte indispensable. *Íd.*

Al respecto, el más alto foro ha expresado que, al resolverse una moción de desestimación por el fundamento de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio, "[e]l tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 428, (2008); Colón v. Lotería, 167 DPR 625, (2006). Además, deberá identificar los elementos que establecen la causa de acción y las meras alegaciones concluyentes que no pueden presumirse como ciertas. Hernández Colón op. cit., pág. 268; Ashcroft v. Global, 556 US 662 (2009); Bell Atlantic Corp. v. Twombly, 550 US 544 (2007).

Cónsono con lo anterior, las alegaciones en la demanda se tienen que interpretar "[c]onjuntamente, liberalmente y de la forma más favorable posible para la parte demandante" Cruz Pérez v. Roldán Rodríguez, et al.,

---

[3] 14 LPRA sec. 3655.

206 DPR 261 (2021); López García v. López García, 200 DPR 50, 69 (2018). En ese sentido, la demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. *Íd.*

Luego de brindarle veracidad a las alegaciones, el tribunal deberá determinar si a base de éstas, la demanda establece una reclamación plausible que justifique la concesión de un remedio al demandante a la luz de la norma establecida en Bell Atlantic Corp. v. Twombly, *supra*. Sobre este particular el tratadista Hernández Colón explica que la plausibilidad o el estándar de plausibilidad consiste, en que "[e]l tribunal debe aceptar como ciertos todos los hechos bien alegados en la demanda eliminando del análisis las conclusiones legales y los elementos de la causa de acción apoyados por aseveraciones conclusorias. Luego de brindarle veracidad a los hechos bien alegados, debe determinar si a base de estos la demandada establece una reclamación plausible que justifique que el demandante tiene derecho a un remedio, guiado en sus análisis por la experiencia y el sentido común…" R. Hernández Colón, Derecho Procesal Civil, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

Realizado el análisis de las alegaciones, de entender que los hechos alegados "[n]o cumplen con el estándar de plausibilidad, el tribunal debe desestimar la demanda". R. Hernández Colón, op. cit.; Ashcroft v. Global, *supra*; Bell Atlantic Corp. v. Twombly, *supra*. El propósito de la doctrina es evitar "[q]ue una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias". R. Hernández Colón, op. cit.; J.A. Cuevas Segarra, Tratado de Derecho Civil, 2da ed., San Juan, Pubs. JTS, 2011, Tomo II, pág. 529.

-III-

Mediante el recurso de epígrafe y los errores allí señalados, los apelantes impugnan la *Sentencia* emitida el 25 de abril de 2025.

Primero, alegan que el foro primario incidió al determinar que los apelantes carecían de legitimación activa. A tales efectos, sostienen que, el 11 de enero de 2024, se convocó una Reunión Extraordinaria para la selección de los nuevos Oficiales de la Junta. No obstante, indican que el señor Pérez abandonó la reunión dejando en control la continuidad de los procesos a la señora Toro. Así, esbozan que una vez llegó el momento de votación, los miembros presentes votaron y ratificaron la extensión del nombramiento de la Junta saliente hasta que se nombrara una nueva, **lo cual a la fecha de la presentación de la *Demanda* no había ocurrido**. Por tanto, arguyen tener legitimación activa para presentar una causa de acción al amparo del Art. 7.15 de la Ley Núm. 164-2009. En segundo lugar, aducen que la alegada deficiencia en la declaración jurada era un error de forma que se podía subsanar mediante una enmienda. Por tal razón, manifiestan que el foro primario incidió al no permitir la demanda enmendada y, en consecuencia, desestimar la reclamación de epígrafe. Estudiado el legajo apelativo, concluimos que los apelantes tienen razón.

La decisión apelada descansó en el entendido que el nombramiento de la señora Toro como vicepresidente ocurrió el 10 de enero de 2020 y que dicho nombramiento lo más que podía durar eran cuatro (4) años. Igualmente, se apoya en que el expediente "no refleja que haya mediado reelección prórroga formal más allá del término reglamentario, el cual venció el 10 de enero de 2024." En base a ello, el TPI señaló que al momento en que se presentó la demanda el plazo máximo del nombramiento establecido por reglamento había expirado. Acto seguido, consignó que si bien los apelantes alegaban que la señora Toro nunca fue removida formalmente, ello no demostraba que su nombramiento había sido válidamente prorrogado o renovado conforme a los procedimientos corporativos internos. Razonó que "[e]l mero hecho de no haber sido sustituida previamente no le otorga, por sí solo, legitimación para

impugnar actos corporativos ulteriores desde un cargo que ya no ostentaba." Así, concluyó que "al no acreditar la continuidad válida de su posición como oficial de la corporación al momento de presentar la acción, carece de legitimación para acudir al foro judicial bajo el amparo del Artículo 7.15. Esta última contención, pasa por desapercibido varias cosas.

Primero, obvió que conforme los apelantes señalaron, y surge de la Minuta del 11 de enero de 2024 sometida como anejo de su *Moción Reconsideración y en Solicitud de Autorización para Presentar Demanda Enmendada*, en la Reunión Extraordinaria no se pudo llevar a cabo el nombramiento de la nueva Junta, por lo que todos los miembros presentes votaron a favor de extender el nombramiento de la Junta saliente **hasta que se nombrara una nueva**.[4] Segundo, ignoró que conforme fue alegado en la demanda, a la fecha en que esta se presentaba no se había nominado a persona alguna para ser evaluado y confirmado, según exige el Reglamento. Por consiguiente, y contrario a lo concluido por el TPI, la continuación de la señora Toro como vicepresidenta quedó validada. Así fue establecido por voto en la reunión extraordinaria celebrada el 11 de enero de 2024. Siendo ello así, la señora Toro, en su carácter como vicepresidenta, tenía legitimación para impugnar al amparo del Art. 7.15 de la Ley Núm. 164-2009 los nombramientos hechos por el señor Pérez.

Por otra parte, cabe precisar que en nuestro ordenamiento jurídico existe una política pública a favor de que los pleitos se vean en los méritos. HRS Erase v. CMT, 205 DPR 689, 701 (2020). Así, para que proceda una moción de desestimación tiene que demostrarse de forma certera que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. López García v. López García, *supra*. Ante ello, resolvemos que no procedía la desestimación del reclamo al amparo de la

---

[4] *Moción Informativa*, anejo *Minuta de Reunión Extraordinaria, 11 de enero de 2024*, Entrada Núm. 27 en SUMAC.

Regla 57 de Procedimiento Civil, *supra*, por alegada deficiencia en la declaración jurada cuando esta era subsanable mediante enmienda.

**-IV-**

Por los fundamentos antes expuestos, revocamos la *Sentencia* apelada y devolvemos el asunto al Tribunal de Primera Instancia para que continue los procedimientos conforme a nuestros pronunciamientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones